Thank you. May it please the court. My name is Jordan Kushner, and I represent the appellant Teresa Graham in her lawsuit against the Minneapolis police officers and the city of Minneapolis. This is a case where Ms. Graham was detained and sent for involuntary temporary commitment to a hospital without any cause whatsoever to believe that she represented a danger to herself or others. The police forcibly entered into her home and then involuntarily detained her and confined her. There's a lot of discussion here in this case or debate about what the appropriate legal standards are. We can discuss that, but I think it's critical to emphasize that regardless of what legal standards are applied, is it the grounds to enter someone's home without a warrant or to detain them and confine them, whatever standards applied, whether it's the strictest or least strict standard, those standards were not met in this case, and it was clear. And that's because there was no evidence to objectively support any kind of reasonable determination that there was any kind of an emergency that required police to enter Ms. Graham's home clearly against her consent or to detain her for mental health reasons. There is nothing in the record to indicate that Ms. Graham specifically presented any sort of danger to herself or others. There was a vague phone call from someone claiming to be a cousin saying that Ms. Graham had threatened members of the family. He stated specifically in the call that he didn't consider the call to be an emergency, that he didn't think that she was probably going to do anything, but requested a welfare check. Ms. Graham had been making a number of calls to the police department claiming about their lack of response to her complaint early in the day. The police went to her home, spoke with her, and in their own notes say that she seemed to be okay. They left. Ms. Graham was hostile towards the police. She didn't want them there. Nothing to indicate that she presented any kind of a threat to anyone. And then nothing changed over the next couple of hours other than Ms. Graham making some other phone calls complaining to the police, but nothing developed to indicate that she presented any kind of a danger to herself or others that could remotely justify Sergeant Shannon Barnett of the Minneapolis Police Department ordering before they got to the house that she be placed on a mental health hold. The city tries to obscure the issues claiming she made the decision at the scene. There was no cause for any such decision at the scene, but the evidence in favor of the appellant clearly makes it clear that she made that decision even before she saw Ms. Graham again. It's in the electronic communications that she had ordered a mental health hold. A dispatcher called up from Minneapolis, called up the Edina Police Department and said, don't worry about her anymore. We're going to have her found her to be annoying. She was making a lot of phone calls. Maybe it's a tough part of the job for the dispatcher and the police officers to deal with the disgruntled citizen who calls them a lot. But under the law, there was no basis whatsoever to enter her home involuntarily and deprive her of her freedom. The law has clearly established that a warrantless entry into a home is not permitted unless there's exigent circumstances. This community caretaking exception is being blown up to a point where it's completely way beyond any kind of remote applicability by the city, some kind of exception. It's a narrow doctrine that should not be used as some kind of a catch-all exception to justify the police violating the fundamental constitutional civil liberties protections whenever they have some kind of whim that tells them to do so. Ms. Graham confirmed that she was okay. Again, they might not have liked the way she interacted with them, but she responded to the police, told them she was fine, she didn't want them there. There was no specific information that she had threatened anyone or that she was going to harm herself or there was any reason that the police had to enter her home against her permission. In other community caretaking cases, there's specific reports of someone being intoxicated, incoherent, non-responsive, some kind of factor where the police needed to be concerned that there might be a danger and they needed to check on things. This was a case where the facts were right up in front of the police. It's on the video. They had a citizen who was responsive, who was not violent or threatening. They had no grounds to enter her home under any kind of exception to the Fourth Amendment. Similarly, there was no basis whatsoever to bring her to our hospital. The purpose of that is if someone presents a danger to themselves or others, they're unable to care for themselves. There were vague assertions about her stability, her mental well-being. There was no information in the record whatsoever about any mental health diagnosis she had or that she had threatened anyone with any sort of physical harm or was going to harm herself. Her house was very neat and perfect order. She was in control of her situation. No one else in her house that she could have harmed and no indication that she was going to hurt herself. All she could do was continue to call the police and complain about her behavior, which is something that whether she's right or wrong, she has a right to do as a U.S. citizen. So we're asking the court to reverse the district court's decision. I think it would be helpful for the court to make it clear that probable cause is required. Well, first to make clear that there's no community caretaking exception here that allowed them to enter home in the first place, but also that probable cause is the requirement to actually detain someone in a hospital. I mean, I think you just made an interesting point. If I heard you right, you said that you would like us to make clear that probable cause is the standard. Does that necessarily mean that the law is unclear in that regard? And if so, how can the law be clearly established? Well, yeah, we believe the law is clear in that regard. Obviously, the district court disagreed, but every circuit that has explicitly addressed the issue, and that's many different circuits, have said that probable cause is the requirement to detain someone for purposes of mental health holds. How about this circuit? In this circuit, the case of Perch said that there's a stand for the proposition that probable cause is required. There hasn't been a case that has directly stated what the requirement is for a mental health hold. So, I think we need to, this is the case where there's an overwhelming authority in all the other circuits, so that they're clearly established. Mr. Kushner, aren't there cases after Perch, though, that kind of muddle up what the correct standard is in our circuit? Yeah, I think there's language in some of the cases that can be, that isn't as precise as it should be, but I don't think that there's any cases that contradict what the overall standards is. You know, there's throwing out of reasonable cause, reasonable belief, and so if those terms are taken out of context, they might be interpreted differently. I did provide extensive case law that establishes that reasonable cause is synonymous with probable cause, and so I think the district court heard by looking at it as a different standard. Sometimes there's a term, reasonable belief, that's thrown out there, but if you look at the other eight circuit cases in context, there was clearly probable cause established whenever there was a detention involved, so I don't think a reasonable reading of the case supports a conclusion that the standard is unclear. That's quite a word to put on police officers, isn't it? I mean, we're having a discussion here about the various cases and the ambiguous use of terms, and that's all well and good for us, but for officers who are in the field, it seems like a lot to ask for them to interpret our ambiguous language over the years. Right, and you know, I didn't set the qualified immunity test, but that of course is an objective standard, and so I think based on this objective standard, the law is clearly established that probable cause is a standard, and I also think though it's critical that whatever standard applied here, and I think the standard here unfortunately got muddled by the district court, the district court should have determined that under any standard that there was no grounds for the police officer's actions here to either enter Ms. Graham's home involuntarily or to detain her in a mental health home, because there is not anything specific, again, to justify, to support what would have allowed them to enter the home or to detain her. Again, to indicate that there was any kind of danger that she presented at the time, or that there was something that would make a mental health hold applicable in this sort of situation. If everyone who has some kind of mental health issue, you know, could be confined, you know, there wouldn't be any room in the hospitals. Police officers deal with people with mental health problems every day. They also deal with recalcitrant, agitated, you know, maybe unpleasant citizens on a daily basis, and this is a case where they decided to, they decided basically to teach Ms. Graham a lesson. Okay, you're going to keep bugging us, we're going to bring you to the, we're going to bring you to the hospital. They knew that she didn't commit any kind of a crime. When you look at Sgt. Shannon Burnett's deposition testimony, she couldn't provide anything specific to indicate that Ms. Graham presented a danger. She didn't honestly believe it. She said she believed that Ms. Graham was in a mental health crisis. She couldn't define what a mental health crisis was. We went around in circles in her deposition for many minutes, where she couldn't come up with any kind of specific criteria for a mental health crisis. She couldn't lay forth the actual standards under Minneapolis police policy, which is extremely vague or statute for mental health detention. This was a clearly arbitrary decision by a Minneapolis police officer. Well, Mr. Kushner, you're well into your rebuttal time. Would you like to reserve some? Yes, I would. Thank you very, thank you for pointing that out. You're welcome. We're going to hear from Mr. Carter. Good morning, your honors, counsel. I'm Brian Carter, an assistant city attorney for the city of Minneapolis. I'm here on behalf of the city and the individual defendant officers. May it please the court. I'm going to just jump right in and start with this dispute over the standard that the court should apply to the community caretaking exception to the warrant requirements. I think the court really put its finger on the issue and its questions of Mr. Kushner. There is a lot of little muddled, maybe even at second and third blush as well. But I do want to point out that clearly in the Burke case, and that was 2012, I believe the citations in our brief, of course, in the Burke case, this court said unequivocally that the reasonable belief standard applies to community caretaking doctrine, and that that standard is a quote, less exacting standard than probable cause. And in doing so, by the way, and I'll come back to this, Burke cited some previous U.S. Supreme Court cases that included Michigan v. Long and Maryland v. Purchase. Definitely not P.C. After Burke and Casada and United States v. Harris, not Harris v. Purch, but United States v. Harris, this court again articulated in no uncertain terms that the appropriate standard is the reasonable belief standard. So we have those three cases which are clear, and there's no muddied water. So the question, I think, that presents to this panel, and the district court correctly said, well, what we're bound by is the oldest Eighth Circuit case on the particular issue. And so then the court went to Harris v. Purch, which was a case in 1982, and in that case, she cited this court's usage of the phrase reasonable grounds to believe or reasonable cause to believe, and the court rightly said, well, I can't really tell if that's reasonable belief, that less exacting standard or probable cause. It's important on that point, though, that the Harris v. Purch case was a good faith defense case. It was not based on whether there was an actual violation of the Fourth Amendment, and so the standard applied came directly from the Missouri statutes and did not articulate the standard for the community caretaking case. If we were to adopt the reasonable belief standard, would we be the only circuit that had that standard as opposed to probable cause? I believe so, Your Honor. Certainly, if there is another circuit, it's only one or two. I mean, Mr. Kushner is absolutely right. There is a clear majority that applies probable cause standard, but the point that I think is important is that this court has already adopted the reasonable belief standard in Burke, and so if the court wants to revisit it, it has to do it on Bonk. And so that's not obviously the case here, and I do want to go the Samuelson case, too, because that one does predate Burke. It's 2002, and Samuelson does use the phrase probable cause, but it does so in a footnote describing the plaintiff's arguments on the reasonableness of the seizure, and the court does in that footnote say there is probable cause, but what the court does not do is clearly articulate the standard that applies. That, for the first time, only happens in Burke, and it's a reasonable belief standard. Mark, I have a question, and it may just be my confusion here, but hopefully you can clear it out. Is the standard that applies to the community caretaking exception to the warrant, in other words, to the mental health seizure? Yes, Your Honor, and the case that holds that is the Cazada case. There is a circuit split on whether the government can enter a home under the community caretaking exception to the warrant requirements, and until Cazada, this circuit had not decided that issue. With Cazada, the circuit decided it in favor of the government's ability to enter the home, and the standard is the same, and Cazada specifically uses the standard reasonable belief, and the standard is, is there an emergency requiring the officer's attention? And the question here is, we say that under Burke and Cazada and U.S. v. Harris, you have to have a reasonable belief that that emergency exists, and so there's another layer on this that I'll mention briefly, and that's what is the reasonable belief standard, and there again is a circuit, I don't know if I would call it a circuit split, but there are different jurisdictions that apply different standards to reasonable belief. I think for what this court did with the Burke case, inciting Michigan v. Long and Maryland v. Bowie, is it basically adopts a reasonable, articulable suspicion standard. Now, some courts have held that reasonable belief is actually lower than reasonable articulable suspicion. Now, I don't think we need to press that issue now, but certainly we would suggest that the most consistent thing with Burke and Cazada and U.S. v. Smith is that the Terry Stop reasonable articulable suspicion applies, and the final point I want to make clear is for the entrance to the home, Mr. Kushner suggested that you need exigent circumstances. That is not the case under Cazada. Exigent circumstances are required under the emergency aid exception, and the emergency aid exception is treated, again, by this court. Some courts do it differently, but the 8th Circuit, as established in Burke, treats the emergency aid exception differently than community caretaking. Emergency aid requires exigent circumstances. Community caretaking does not. Community caretaking does require the existence of an emergency, right? Yes, Your Honor. Let me finish the question. Is that defined as an imminent threat to self or others? No, Your Honor, and I apologize for interrupting before you finished your question. I think an imminent threat is required under the emergency aid exception, and it's explicitly required, and by carving out that separate exception, as this court has done in the community caretaking exception, it has basically removed, it has by necessity removed that requirement, and it is only that an emergency exists, and I think if you look at the case law, it illustrates this. For example, Meehan v. Thompson, you had a woman who was in a vehicle that was pulled over in Edina, Minnesota, which is neighboring Minneapolis. The driver was arrested, and she was, under the community caretaking exception, she was seized, put in a squad. No doubt there was a seizure, and she was taken to a detox facility. There was no imminent risk to her danger, to her safety. She was 10 blocks away from home. She was moderately intoxicated. In fact, she had a blood alcohol level of 0.08. There was a grocery store across the street that she could have gone to. Her husband was on the way. Nevertheless, the officer waited three minutes and took her, seized her, and took custody of her. There was no imminent threat to her safety there, and I think if you look at the other cases as well, the Samuelson case, there was no imminent threat to him either. So here, and I'll move to the facts of this case that support that there was an emergency that existed, and this goes straight to the qualified immunity argument for the officers because that analysis as to whether they violated clearly established law must be couched with the specific facts. We have Teresa Graham, who Sergeant Barnett knew. She knew who Teresa Graham was from previous interactions with her from the year before. She knew, based on information from Inspector Cathyway, that Teresa Graham had mental health issues and that she has struggled with mental health crises in the past. They had a 911 call from a cousin, and 9-1-1, obviously, we had their phone number. The 911 caller revealed information about Ms. Graham. He said that she had called him at work and threatened him and his family, and he described general mental health issues she had. He was concerned enough to call 9-1-1 to ask the police to check her out, and I think that's significant even though he did admit, as Mr. Kushner said, that he didn't think she would do anything, but at the same time, the facts are that he called 9-1-1 for help. Now, Officer Sanchez and Knorr responded, and Ms. Graham was immediately confrontational and angry. She denied having family, which the officers knew to be untrue because the cousin had called. She then left and returned with her phone, and you can see her demeanor in the body camera footage. She's moving back and forth, even though the officer is standing still. There is clearly something going on with her, and although the officers said she was A-OK, they also said they were unable to check on her welfare because of her unwillingness to cooperate, and in fact, the reason why they left was because Mr. Knorr misread the call remarks and thought the threat came from a male living with Teresa Graham, and so when he saw that there was no male there who lived with Teresa Graham, he decided to leave. Now, after that happened, Ms. Graham does a variety of things. She calls the inspector of the Frith Precinct, and then Sergeant Barnett calls her back and tries to explain what was going on, why the officers came to visit, and that an officer had actually responded to Ms. Graham's call about somebody smoking some sort of drug in her backyard, and then Ms. Graham, she sends a slew of emails to the mayor, to the inspector, and to a council member, and then she calls 911 three times in 40 minutes, and the first call, I think, is indicative of what was going on. The call taker described her as being verbally aggressive, agitated, and not making much sense, so there we have what Mr. Kushner claims is present in a lot of these cases as incoherence. Ms. Graham was not making sense. She then calls 911 two more times, and so the officers then decide to go out again, and here's an important fact that Mr. Kushner didn't mention was that a St. Paul police officer who's related to Ms. Graham called and warned Adina, or spoke with Adina, and warned that she might fight with the police, so there we have two elements of being a threat, the threat to the cousin and the call from the relative to Adina that she might talk to the police, and then you can see Ms. Graham's demeanor when she is visited. She denies speaking to Sergeant Barnett, even though she just spoke to her half an hour earlier. She leaves, comes back, slams the door, and then you can hear her calling 911, which frankly does not make sense because 911 is right at the doorstep, and in fact, Officer Sanchez states, we are 911, and so we see all of this when you put all of this together. It's more than sufficient facts to suggest that Ms. Graham, probable cause or reasonable belief, was in a mental health crisis. There was a real emergency, and she needed help, and the burden on her was just a trip via ambulance being escorted by paramedics, not cop, not police officers, so if you look at the burden on her, it was just a transportation via ambulance to the hospital, and with that, Your Honor, I would suggest that there is clear evidence that the officers had a standard to seize her and enter her home, and clearly, it is not the case that only a plainly incompetent officer would have thought that because that's the standard Mr. Kushner has to meet to defeat qualified immunity, and with that, I'll rest on my brief on the other issues. Thank you, Your Honor. Thank you, Mr. Clark. Mr. Kushner, you have a minute and 49 seconds. Thank you. First, let me clarify the standards. So, Burke v. Sullivan applies a reasonable less than probable cause standard for the community care taking exception to enter a home. It doesn't deal at all with a mental health detention, so there isn't anything on the books to suggest that less than probable, to support that less than probable cause is needed for an involuntary mental health confinement, so there's, so there are two steps here. One is, did the police have basis to enter the home? Number two is, did they have basis to involuntarily confine her to a hospital for mental health evaluation? Significant intrusion, it might not be as foreboding as jail, but on the other hand, a much bigger stigma in some ways than going to jail, and it's certainly recognized by the courts as a significant constitutional intrusion, at least equivalent to a law enforcement arrest. So, as to the reasonable, as to the community care taking exception to enter the home, that just doesn't matter under any reasonable construction of the case law. There isn't anything that approaches what happened in the cases where community care taking exception was done. Again, these are cases where there was reports specifically of someone engaging in violent or threatening behavior, or being a danger, you know, threatening themselves or other people, or being non-responsive, or under the influence, you know, the case of the person on the road, I think that was the Meehan case, where they were, you know, brought to a detox, you know, that was a person who was on the road, they weren't in a home, they were on the street and intoxicated and, you know, had a problem. Ms. Graham was in her home, so however you think of her behavior, she was safe in her home, not in a position to bother anyone else, and no indication that she was going to harm herself. So, there wasn't any grounds to enter the home, because they knew she was there, and she made clear she was okay, you know, whether she was totally healthy or not, you know, that's not the issue here. Again, they're being agitated, and, you know, what we have is these factors being blown way out of proportion, you know, and opportunistically interpreted, but Ms. Graham, you know, they had nothing specific that she had mental illness, there was vague allegations of mental health issues, Barnett testified in her deposition that she had no specifics, she just at most heard something about some maybe mental health problems from a supervisor, nothing to indicate a danger to herself or others or someone that needed to be confined. She aggressively complained to the police about a number of issues. She didn't send a slew of emails, as Mr. Carter said, she sent one email, but what does it matter? Again, there are people who can send a lot of emails that might not make sense, and they don't want to get just confining them. Okay, thank you very much, Judge. Thank you. Council, we appreciate your briefs and your arguments today. Thank you for assistance in allowing us to do this by video. The case will be submitted and cited in due course.